[Cite as *State v. Oder*, 2022-Ohio-3048.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021 CA 00061 |
| | : | |
| JEFFREY R. ODER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Licking County Court
of Common Pleas, Case No. 21 CR
00159


JUDGMENT:                   AFFIRMED


DATE OF JUDGMENT ENTRY:     August 31, 2022


APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

WILLIAM C. HAYES                        STEPHEN T. WOLFE
LICKING COUNTY PROSECUTOR               WOLFE LAW GROUP LLC
                                        1350 West Fifth Ave., Suite 330
CLIFFORD J. MURPHY                      Columbus, OH 43212
20 North Second Street, 4th Floor
Newark, OH 43055

*Delaney, J.*

{¶1} Defendant-Appellant Jeffrey R. Oder appeals his July 7, 2021 conviction and sentence by the Licking County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

**The Stolen Motor Vehicle**

{¶2} On December 14, 2020, the Asset Protection Technician with Carvana, located in Heath, Licking County, Ohio, called the Heath Police Department to report two stolen vehicles from the Carvana car lot. The stolen vehicles were a black Ford Mustang and a black Dodge Challenger. The patrolman with the Heath Police Department entered the vehicles into the LEADS database as stolen vehicles.

**The Pursuit**

{¶3} Trooper Samuel Moon with the Ohio State Highway Patrol was on duty during the early morning hours of March 11, 2021. At approximately 3:28 a.m., Trooper Moon was traveling northbound on State Route 79 near Heath, Ohio. When Trooper Moon was approaching the intersection of State Route 79 and Ridgley Tract Road, he noticed a two-door vehicle turning into the intersection at a high rate of speed.

{¶4} Based on the infraction, Trooper Moon attempted to initiate a traffic stop of the vehicle. He activated the emergency light bars on his cruiser and followed the vehicle, but the vehicle did not slow down. While the speed limit on the roadway was 50 miles per hour, Trooper Moon had to increase his speed to approximately 120 miles per hour to catch up to the vehicle.

{¶5} During the pursuit, the vehicle entered the wrong lane of traffic on State Route 79 and began traveling south in a northbound lane. Trooper Moon noticed the

vehicle did not have its headlights activated while traveling into oncoming traffic. When the vehicle suddenly slowed its speed, Trooper Moon attempted to drive parallel with the vehicle. The vehicle made a sharp left turn onto the off-ramp for Interstate 70, entering the highway driving against oncoming traffic.

{¶6} The vehicle moved to the right-side berm of the highway, where it continued to move forward against traffic, but at a slower speed. Trooper Moon pulled his cruiser behind the vehicle, with lights and sirens activated, and used his cruiser's loudspeaker to verbally order the driver to shut the car off. The driver ignored the trooper's repeated commands to stop the vehicle and continued to move forward, revving the engine while Trooper Moon followed.

{¶7} The vehicle finally stopped when backup from the Buckeye Lake Police Department, Licking County Sheriff's Department, and Hebron Police Department arrived on the scene. The police officers formulated a plan and approached the vehicle with weapons drawn and a stop stick to place under the driver's side rear tire. The officers found two occupants in the vehicle: Defendant-Appellant Jeffrey R. Oder was the driver and Bradley Hinkle was the passenger. Oder and Hinkle initially failed to comply with police officer's commands to the open the doors to the vehicle, but they finally exited the vehicle, were placed in handcuffs, and searched by the officers. Oder was secured in the rear of Trooper Moon's cruiser. Hinkle was placed in the rear of the Buckeye Lake Police officer's cruiser.

**The Post-Pursuit Search**

{¶8} Trooper Moon returned to the stopped vehicle and determined it was a black Ford Mustang. He ran the plates of the vehicle in LEADS and found the vehicle identification number matched the vehicle stolen from the Carvana car lot in December 2020.

{¶9} When Trooper Moon looked inside the Ford Mustang, he observed a white crystalline substance scattered all over the cabin of the vehicle. The substance looked like amphetamines to him, based on his training and prior experience. He next found a small scale on the driver's side door pocket. In the rear driver's side seat, he found a box. Inside the box was a large glass bong. Next to that was a small black zip-up bag. The bag contained two small, clear plastic bags containing the same white to clear crystalline substances wrapped inside. A crystalline substance was scattered over the passenger floorboard and there was a broken small plastic bag on the passenger seat. In the glove box, Trooper Moon found a glass smoking device with burnt residue. In the front passenger side door pocket, he found $1000 in cash.

{¶10} After the stop, Trooper Moon observed that Oder exhibited signs of methamphetamine use, such as anxiety, sweating, and constricted pupils that did not react to light. Trooper Moon conducted Standardized Field Sobriety Tests on Oder in the rear passenger seat of the cruiser for officer safety purposes. He then conducted an Advanced Roadside Impairment Drug Enforcement field test, specifically the modified Romberg Test, which indicated an impairment from methamphetamine. He asked Oder for a urine sample, but Oder refused.

{¶11} Heath Steele, formerly a patrolman with the Buckeye Lake Police Department on March 11, 2021, searched Hinkle, the passenger of the vehicle. Steele discovered $1,200 in cash in Hinkle's pocket. Steele also observed the scale in the car door, the large bong in the backseat of the car, and a large amount of what he identified as methamphetamine in the car, based on his training and experience.

**The Indictment**

{¶12} On April 8, 2021, the Licking County Grand Jury returned a four-count, Superseding Indictment against Oder. He was charged with: (1) receiving stolen property (motor vehicle), a fourth-degree felony in violation of R.C. 2913.51(A); (2) aggravated possession of methamphetamine, a second-degree felony in violation of R.C. 2925.11(A)(C)(1)(C); (3) aggravated trafficking in methamphetamine, a second-degree felony in violation of R.C. 2925.03(A)(2)(C)(1)(d); and (4) failure to comply with the order or signal of a police officer, a third-degree felony in violation of R.C. 2921.331(B). The indictment also contained a forfeiture specification.

{¶13} Oder entered a not guilty plea to the charges. The matter was set for a jury trial.

{¶14} Prior to the jury trial, Oder filed a motion in limine on July 6, 2021. Oder requested the trial court prohibit the State from introducing evidence at trial of Oder's conviction in the municipal court for Operating a Motor Vehicle Under the Influence of Alcohol or Drugs, a violation of R.C. 4511.19(A)(1)(a). Oder argued the introduction of the evidence of his conviction based on the events of March 11, 2021, was not relevant to the charged offenses in the present case and/or would constitute "other bad acts"

evidence pursuant to Evid.R. 404. The State did not file a response to the motion in limine.

**The Jury Trial**

{¶15} The matter came on for jury trial on July 6, 2021. Prior to jury selection, the trial court addressed Oder's motion for limine. Counsel for Oder argued that any discussion or reference to the OVI case arising from the March 11, 2021 incident would be prejudicial and outweigh the probative value. (T. 6). The State responded that while the motion in limine was styled as an Evid.R. 404(B) motion, the evidence did not involve other acts. (T. 7). Oder was charged with possession of methamphetamine, which included the elements to "obtain, possess or use." (T. 7). Oder engaged in a high-speed chase, Trooper Moon conducted field sobriety tests, and Oder refused to consent to a urine test. (T. 7). The State argued the information was not related to Evid.R. 404(B) and went to the heart of the charge for possession of methamphetamine. (T. 7). The information was prejudicial, but relevant. (T. 7). The trial court agreed with the State's argument and denied the motion in limine. (T. 7).

{¶16} Trooper Moon testified as to the pursuit and arrest on March 11, 2021. State's Exhibit 1, the dash cam video from Trooper Moon's cruiser recorded on March 11, 2021, was played for the jury. Trooper Moon testified he sent the suspected drugs seized from Oder's vehicle to the Ohio State Highway Patrol Crime Lab. (T. 107). The lab report showed the following: (1) one Ziploc plastic bag containing a crystal-like substance identified as methamphetamines, weighing 16.16 grams; (2) one knotted plastic bag containing a crystal-like substance identified as methamphetamines, weighing 14.09 grams; and (3) one knotted plastic bag containing a crystal-like

substance identified as methamphetamines, weighing 5.67 grams. (T. 108). The total weight of the tested methamphetamines, a Schedule II controlled substance, seized from the vehicle was 35.9363 grams, which was greater than five times bulk. (T. 134). The parties stipulated to the lab report in State's Exhibit 10. (T. 133). The scale found in the driver's side door was not tested for the presence of drugs.

{¶17} Trooper Moon testified that Oder showed signs of methamphetamine use during the field sobriety testing. (T. 109). There was no testimony that Oder was charged and convicted of OVI based on the failed field sobriety tests. Counsel for Oder did not object to the testimony regarding the field sobriety tests.

{¶18} At the conclusion of the State's case, Oder made a Crim.R. 29 motion for dismissal. He argued that while Oder conceded to receiving stolen property and failure to comply, he contested the charges of aggravated trafficking and aggravated possession of methamphetamine. (T. 136). The evidence presented by the State showed the methamphetamine and cash found in the vehicle were on the passenger side. (T. 136). There was no methamphetamine found on the scale found in the vehicle. (T. 137). The trial court denied the motion. (T. 138).

{¶19} Oder testified on his own behalf. He admitted on March 11, 2021, he was driving the 2017 Mustang DT Premium that he had stolen from the Carvana car lot in December 2020. (T. 143). He was driving to Buckeye Lake with his "homie" Hinkle, but he was driving poorly when Trooper Moon activated his lights. (T. 139, 145). When he saw Trooper Moon following him, Oder "freaked" and asked Hinkle what to do. Hinkle told him to "drive." (T. 145). Oder drove on the wrong side of the road to get away from Trooper Moon, but the chase ended when his clutch went out. (T. 146). He kept trying to

get his clutch to reengage instead of stopping the car when ordered by Trooper Moon. (T. 146).

{¶20} Oder denied having any methamphetamine on him when he was stopped. He testified that the cash, bong, and methamphetamine found in the bags and spread throughout the vehicle belonged to Hinkle. (T. 147). He admitted the scales belonged to him and that he was a drug addict. (T. 160). Because Oder was concentrating on driving and evading Trooper Moon, he did not know Hinkle was spreading the methamphetamine all over the car. (T. 165).

{¶21} At the conclusion of Oder's case, counsel for Oder renewed his motion for Crim.R. 29. (T. 174). The trial court denied the motion.

{¶22} The jury returned its verdict, finding Oder guilty of Count One, receiving stolen property; Count Two, aggravated possession of methamphetamine; and Count Four, failure to comply with the order or signal of a police officer. The jury found Oder not guilty on Count Three, aggravated trafficking in methamphetamine.

**The Sentencing**

{¶23} The trial court moved immediately to sentencing after Oder waived his right to a presentence investigation report. The trial court sentenced Oder to 12 months in prison on Count One; 24 months in prison on Count Four; and an indefinite prison term for Count Two, with a minimum period of four years and a maximum period of six years.

{¶24} The trial court next imposed consecutive sentences. It stated at the sentencing hearing:

Imposing consecutive sentences here because I find that it's necessary to

protect the public and punish the offender. That concurrent terms would

demean the seriousness of these offenses and, frankly, that Mr. Oder's

term – or prior record will certainly justify here. Also, the term imposed on

Count Four is required to be served consecutively by operation of law.

(T. 232).

{¶25} Oder's aggregate prison term was seven years indefinite to nine years.

{¶26} The trial court journalized the verdict and sentence in a judgment entry filed

on July 7, 2021. In the judgment entry, the trial court stated:

Pursuant to R.C. 2929.14(C)(4), the Court orders that the sentences

imposed on Counts 1 and 2 be served consecutively to each other because

the Court finds that consecutive terms are necessary to protect the public

from future crime, and, to punish the offender; and that consecutive

sentences are not disproportionate to the seriousness of the offender's

conduct and to the danger the offender poses to the public. Additionally,

the Court finds that the Defendant's history of criminal conduct

demonstrates that consecutive sentences are necessary to protect the

public from future crime by the offender.

(Judgment Entry, July 7, 2021).

{¶27} It is from this conviction and sentence that Oder now appeals.

**ASSIGNMENTS OF ERROR**

{¶28} Oder raises six Assignments of Error:

{¶29} "I. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE PRIOR BAD ACTS OF ODER, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

{¶30} "II. JEFFREY ODER'S CONVICTION FOR AGGRAVATED DRUG POSSESSION IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶31} "III. JEFFREY ODER'S CONVICTION FOR AGGRAVATED DRUG POSSESSION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶32} "IV. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.

{¶33} "V. THE TRIAL COURT UNLAWFULLY ORDERED ODER TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS,

GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶34} "VI. ODER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

**ANALYSIS**

**I. and VI.**

{¶35} In his first Assignment of Error, Oder argues the trial court committed plain error when it permitted the State to introduce the evidence of Oder's field sobriety tests. In his sixth Assignment of Error, Oder contends that he received the ineffective assistance of counsel for trial counsel's failure to object to the introduction of the evidence. On both Assignments of Error, we disagree.

**Plain Error Review**

{¶36} Prior to the jury trial, Oder filed a motion in limine to prevent the State from introducing evidence of Oder's operation of the motor vehicle while under the influence of methamphetamine and his resulting conviction for OVI. Oder argued the evidence was prohibited by Evid.R. 404(B) as "other acts evidence." The trial court denied the motion in limine. During the trial, Trooper Moon testified that he gave Oder field sobriety tests based on Oder's observable physical symptoms of methamphetamine use, including anxiety, sweating, and constricted pupils that did not react to light. The result of the field sobriety tests indicated that Oder was under the influence of methamphetamine. Trooper

Moon testified he requested Oder to take a urine test, but Oder refused. Counsel for Oder did not object to the line of questioning.

{¶37} Because Oder raises this matter as an Assignment of Error and trial counsel failed to object to the alleged error, we review the matter under the plain error standard of review. Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule places the following limitations on a reviewing court's determination to correct an error despite the absence of timely objections at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Wood*, 5th Dist. Knox No. 20CA000010, 2020-Ohio-4251, 2020 WL 5092841, ¶ 18 citing *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, 2009 WL 943968, ¶ 89, citing *State v. Morales*, 10th Dist. Franklin Nos. 03-AP-318, 2004-Ohio-3391, 2004 WL 1446117, ¶ 19.

{¶38} Oder contends the introduction of the evidence was prohibited under Evid.R. 404(B) as "other acts evidence." Evid.R. 404(B) states in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * * *."[1] Oder contends Trooper

---

[1] Evid.R. 404(B) was amended, effective July 1, 2022. It now reads: "(1) Prohibited Uses. Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. (2) Permitted Uses; Notice. This

Moon's testimony about the field sobriety tests, Oder's failure of the test indicating that he was under the influence of methamphetamine, and Oder's refusal to take a urine test was inadmissible under Evid.R. 404(B) because the evidence was not probative to the issue of whether Oder was in possession of methamphetamine. The jury could have construed the evidence as tending to show that Oder acted in conformity with having a propensity toward committing crimes.

{¶39} Oder was charged with aggravated possession of methamphetamine, a second-degree felony in violation of R.C. 2925.11(A)(C)(1)(C). R.C. 2925.11(A) states, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." The trial court found the evidence regarding the field sobriety tests admissible because it was relevant to the elements of aggravated possession of methamphetamine, which includes "use." The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Juarez*, 5th Dist. Stark No. 2020CA00067, 2020-Ohio-6692, 2020 WL 7353343, ¶ 41 citing *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Generally, all relevant evidence is admissible. Evid.R. 402. Abuse of discretion means more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343.

---

evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

{¶40} We find that Oder has failed to meet the first element of the plain error rule because there was no error. The trial court did not deviate from any legal rule when it admitted Trooper Moon's testimony regarding Oder's indications of methamphetamine impairment and the results of the field sobriety testing. The evidence was relevant to the elements of aggravated possession of methamphetamine and therefore admissible.

{¶41} Oder's first Assignment of Error is overruled.

### Ineffective Assistance of Counsel

{¶42} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶43} Based on our determination that the trial court did not commit plain error in finding the evidence of the field sobriety tests was relevant and therefore admissible, we find that Oder cannot demonstrate the first prong of the *Strickland* test. His trial counsel did not fall below the objective standard of reasonable representation when counsel did not object to the admission of the evidence at trial.

{¶44} Oder's sixth Assignment of Error is overruled.

**II. and III.**

{¶45} In Oder's second and third Assignments of Error, he contends his conviction for aggravated possession of methamphetamine was against the sufficiency and manifest weight of the evidence. We disagree.

{¶46} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶47} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest

weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶48} Pursuant to R.C. 2925.11(A), the State was required to prove beyond a reasonable doubt that Oder knowingly obtained, possessed, or used a controlled substance or a controlled substance analog, in this case, methamphetamine. Oder asserts the State failed to produce sufficient evidence that he knowingly obtained, possessed, or used methamphetamine. He testified the methamphetamine, black bag, and bong found in the Ford Mustang belonged to Hinkle. When searched by the police, there were no drugs found on Oder. The police found $1,200 in cash on Hinkle when he was searched and there was $1,000 in the passenger door side pocket.

{¶49} R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D)(1).

{¶50} Possession may be actual or constructive. *State v. Granados*, 5th Dist. Fairfield No. 13-CA-50, 2014-Ohio-1758, ¶ 25, citing *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98 (1989). To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351 (1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d

134, 738 N.E.2d 93 (8th Dist.2000). Circumstantial evidence that the defendant was in very close proximity to the contraband may show constructive possession. *Granados*, *supra*, citing *State v. Barr*, 86 Ohio App.3d 227, 235, 620 N.E.2d 242 (8th Dist.1993); *State v. Morales*, 5th Dist. Licking No. 2004 CA 68, 2005–Ohio–4714, ¶ 50; *State v. Underdew*, 5th Dist. Muskingum No. CT2021-0006, 2021-Ohio-3811, 2021 WL 4980659, ¶¶ 18-19.

{¶51} Oder admitted that he stole the Ford Mustang in December 2020 and had sole possession of the vehicle. Oder admitted that he was a drug addict. Trooper Moon testified he saw a white, crystalline substance, which based on his training and experience he identified as methamphetamine, scattered all over the cabin of the vehicle. It was observed on the passenger side floorboard and the floorboards behind the driver and passenger sides. Trooper Moon found a broken plastic bag containing methamphetamine on the passenger seat. There was a drug scale found in the driver's side pocket that Oder admitted belonged to him. A box was located behind the driver's seat that contained a glass bong and a black bag with two baggies filled with methamphetamine. The lab report showed that 35.92 grams of methamphetamine were in the Ford Mustang.

{¶52} When he was arrested, Trooper Moon noticed that Oder showed signs of methamphetamine impairment. He was anxious, sweating, and his constricted pupils did not react to light. After Trooper Moon conducted the field sobriety tests, the tests indicated Oder was under the influence of methamphetamine.

{¶53} In this case, the jury could reasonably infer that Oder knowingly obtained, possessed, or used the methamphetamine found in the Ford Mustang. Oder was in very

close proximity to the methamphetamine in the motor vehicle, close enough where a jury could reasonably find that he exercised dominion and control over the methamphetamine in the motor vehicle. At the time of his arrest, he also showed signs of methamphetamine impairment as confirmed by field sobriety tests.

{¶54} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Oder possessed methamphetamine. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra*. The jury in this case was presented with multiple charges; specifically, aggravated possession of methamphetamine and aggravated trafficking in methamphetamine. The jury found Oder not guilty of aggravated trafficking in methamphetamine, showing it considered the evidence and discerned beyond a reasonable doubt that Oder knowingly obtained, possessed, or used methamphetamine.

{¶55} We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387. Upon our review of the entire record in this matter, Oder's conviction for aggravated possession of methamphetamine is not against the sufficiency or the manifest weight of the evidence.

{¶56} Oder's second and third Assignments of Error are overruled.

**IV. and VI.**

{¶57} In his fourth Assignment of Error, Oder challenges the constitutionality of the Reagan Tokes Act. The trial court sentenced Oder pursuant to the Reagan Tokes Act upon his conviction for aggravated possession of methamphetamine, a second-degree felony. Oder contends in his sixth Assignment of Error that his trial counsel was ineffective for failing to object to the constitutionality of the Reagan Tokes Act.

**Reagan Tokes Act**

{¶58} We first note that pursuant to *State v. Maddox*, Ohio St.3d, 2022-Ohio-764, N.E.3d, constitutional challenges to the Reagan Tokes Act are ripe for review on direct appeal.

{¶59} In *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, we set forth this Court's position on the arguments raised in Oder's fourth Assignment of Error:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in Wolfe as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01,

2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

*State v. Stevens*, 5th Dist. Muskingum No. CT2020-0010, 2022-Ohio-2474, 2022 WL 2801202, ¶ 2.

{¶60} Based on the foregoing authority, Oder's fourth Assignment of Error is overruled.

### Ineffective Assistance of Counsel

{¶61} Oder's sixth Assignment of Error argues his trial counsel rendered ineffective assistance by failing to challenge the constitutionality of the Reagan Tokes Act. We disagree.

{¶62} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶63} Because we have found the Reagan Tokes Act is constitutional, Oder cannot demonstrate prejudice from counsel's failure to raise the claim in the trial court.

{¶64} The sixth Assignment of Error is overruled.

**V.**

{¶65} In Oder's final Assignment of Error, he argues the trial court's imposition of consecutive sentences was contrary to law. Upon our review of the record, we disagree.

{¶66} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶ 1. Pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b).

{¶67} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, ¶ 23. R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences and provides:

> If multiple prison terms are imposed on an offender for convictions of
> multiple offenses, the court may require the offender to serve the prison
> terms consecutively if the court finds that the consecutive service is
> necessary to protect the public from future crime or to punish the offender
> and that consecutive sentences are not disproportionate to the

seriousness of the offender's conduct and to the danger the offender poses

to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or

was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or

more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single

prison term for any of the offenses committed as part of any of the courses

of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that

consecutive sentences are necessary to protect the public from future

crime by the offender.

{¶68} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Newman*, 5th Dist. Fairfield No. 20-CA-44, 2021-Ohio-2124, 2021 WL 2628079, ¶ 100 quoting *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, syllabus. In other words, the sentencing court does not have to perform "a word-for-word recitation of the language of the statute." *Id.* at ¶ 29. Therefore, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the

findings, consecutive sentences should be upheld." *Id.* If a sentencing court fails to make the findings required by R.C. 2929.14(C)(4), a consecutive sentence imposed is contrary to law. *Id.* at ¶ 34. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id.* at ¶ 37.

{¶69} Oder argues on appeal that the trial court failed to make the requisite findings at the sentencing hearing to impose consecutive sentences. In his appellate brief, Oder specifically declares the trial court's error to be that "the court failed to specify whether consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" under to R.C. 2929.14(C)(4). Oder does not point this Court to any other alleged error pursuant to R.C. 2929.14(C)(4) to argue the imposition of consecutive sentences was contrary to law.

{¶70} During the sentencing hearing when the trial court imposed consecutive sentences, it stated:

> Imposing consecutive sentences here because I find that it's necessary to protect the public and punish the offender. That concurrent terms would demean the seriousness of these offenses and, frankly, that Mr. Oder's term – or prior record will certainly justify here. Also, the term imposed on Count Four is required to be served consecutively by operation of law.

(T. 232).

{¶71} The State argues we should consider another statement made by the trial court at the sentencing hearing to find that its imposition of consecutive sentences was not contrary to law:

THE COURT: All right. Mr. Oder, do you want to say anything?

MR. ODER: Just that I'm sorry for my actions. It – it – I'm sorry.

THE COURT: I agree. *Man, you could have killed somebody that night driving on the wrong side of the highway, that speed, turning your lights off, with these prior convictions.* What is your suggestion? Five?

MR. DEPUE: The State asked for five on Count 2, Your Honor, and then two years on the failure to comply, one year on the RSP. * * *

(Emphasis added.) (T. 229). Oder waived his right to a presentence investigation report. During Oder's direct testimony at trial, he testified as to his prior felony convictions for aggravated possession of drugs in 2015, receiving stolen property in 2016, illegal assembly of chemical for manufacture in 2010, aggravated possession of drug paraphernalia in 2010, illegal assembly for manufacture and illegal manufacturing in 2006, and grand theft of an auto in 2020. (T. 139-140).

{¶72} In *State v. Bonnell*, the trial court stated at the sentencing hearing where it imposed consecutive sentences, "Going through all of the sentencing factors, I can not overlook the fact your record is atrocious. The courts have given you opportunities. * * * On the PSI pages 4 through 16, it's pretty clear that at this point in time you've shown very little respect for society and the rule of society. The Court feels that a sentence is appropriate." *Bonnell*, 2014-Ohio-3177, ¶ 9. The Ohio Supreme Court reviewed the requirements of R.C. 2929.14(C)(4) with the trial court record in *Bonnell* to find the trial court had met some of the mandated statutory findings of R.C. 2929.14(C)(4), but not all. The Supreme Court discerned from the trial court's statement that Bonnell "had shown very little respect for society" so there was a need to protect the public from future

crimes or to punish Bonnell. *Id.* at ¶ 33. The Court also concluded by the trial court's description of Bonnell's record as "atrocious" that it knew of Bonnell's criminal record, and that record related to a history of criminal conduct demonstrating a need to protect the public from future crime. *Id.* at ¶ 33. The Supreme Court found the trial court, however, never addressed the proportionality of consecutive sentences to the seriousness of Bonnell's conduct and the danger he posed to the public; therefore, it vacated the sentence and remanded the matter to the trial court for resentencing. *Id.* at ¶ 33, 37.

{¶73} As stated above, Oder only argues to this Court that the trial court failed to specify whether consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public under to R.C. 2929.14(C)(4). Unlike *Bonnell*, we can discern from the trial court's statements at the sentencing hearing "that concurrent terms would demean the seriousness of these offenses" and "it's necessary to protect the public and punish the offender," the trial court addressed the proportionality of consecutive sentences to the seriousness of Oder's conduct and the danger he posed to the public. The trial court's imposition of consecutive sentences was not contrary to law.

{¶74} Oder's fifth Assignment of Error is overruled.

## CONCLUSION

{¶75} The judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.