[Cite as *State v. Turner*, 2023-Ohio-441.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
|     Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022 CA 00040 |
| LAWRENCE J. TURNER | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Criminal Appeal from the Court of Common Pleas, Case No. 21CR416


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    February 15, 2023


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

WILLIAM C. HAYES                WILLIAM T. CRAMER
PROSECUTING ATTORNEY          470 Olde Worthington Road
ROBERT N. ABDALLA              Suite 200
ASSISTANT PROSECUTOR          Westerville, Ohio   43082
20 South Second Street
Newark, Ohio  43055

*Wise, P. J.*

{¶1} Defendant-Appellant Lawrence J. Turner appeals his convictions and sentences entered in the Licking County Court of Common Pleas following a bench trial.

{¶2} Appellee is the state of Ohio.

**STATEMENT OF THE FACTS AND CASE**

{¶3} On July 29, 2021, Defendant-Appellant Lawrence J. Turner was indicted on four drug-related counts: Counts 1 and 2: Aggravated Trafficking in Methamphetamine, in amounts exceeding five times bulk but less than fifty times bulk, in violation of R.C. §2925.03(A)(1)(C)(1)(d), both charged as first degree felonies based on an allegation that the transactions occurred in the vicinity of a juvenile; Count 3: Aggravated Possession of Methamphetamine, in violation of R.C. §2925.11(A)(1)(C)(1)(a), a fifth degree felony; and Count 4: Aggravated possession of psilocybin in violation of R.C. §2925.11(A)(1)(C)(1)(a), a fifth degree felony. The indictment contained a Forfeiture Specification (U.S. Currency) for violation of R.C. §2981.02(A)(1)(B) and R.C. §2941.1417(A), and two Forfeiture Specifications (Firearms) for violation of R.C. §2981.02(A)(1)(C) and R.C. §2941.1417(A).

{¶4} Appellant waived his right to a jury trial and on April 4, 2022, the matter proceeded to a bench trial where the following testimony was presented:

{¶5} Joshua McDonald testified that after he got caught with drugs, he agreed to work with law enforcement and assisted the police in controlled buys. (T. at 9). The police arranged for McDonald to make two buys and told him what to do. McDonald signed a contract as an informant and was told that he would face criminal consequences if he did not cooperate. (T. at 23). McDonald participated in controlled buys on June 29, 2021, and

July 15, 2021. (T. at 9). McDonald testified that he had previously purchased drugs from Appellant Lawrence Turner, and met with Appellant on June 29, 2021, in order to purchase drugs. *Id.* Prior to meeting with Appellant, law enforcement officers outfitted McDonald with recording devices which recorded the June 29 purchase transaction. (T. at 11). The audio recording was introduced as State's exhibit 7 (T. at 11-14). After purchasing the drugs from Appellant, McDonald returned to law enforcement officers to hand off the audio recording and purchased drugs, which included two ounces of methamphetamine. (T. at 14).

{¶6} McDonald also testified regarding the controlled buy on July 15, 2021. (T. at 15). Once again, prior to meeting with Appellant, McDonald met with law enforcement officers who outfitted McDonald with recording equipment and provided him the necessary cash to make the purchases. (T. at 15-16). The State introduced the audio recording as Exhibit 14. (T. at 16-20). McDonald testified that on July 15, 2021, he purchased approximately four ounces of methamphetamine from Appellant. (T. at 17). He testified that Appellant's wife and child were present at the transaction and identified their voices on the audio recording. (T. at 19). Following the transaction, McDonald met with law enforcement officers and turned over the recording and purchased drugs. (T. at 20).

{¶7} On cross-examination, McDonald stated he has been twice convicted of felonies and had several convictions for theft. (T. at 21). McDonald testified that he was ordered to make the two controlled buys by law enforcement detectives under threat of additional criminal consequences. (T. at 23). McDonald testified that he was currently out on bond for a felony theft charge, and he believed that if he did not testify, that his bond would be revoked. (T. at 24).

**{¶8}** Detective Sergeant Alan Thomas of the Licking County Sheriff's Department also testified regarding the controlled buys which took place on June 29, 2021, and July 15, 2021. Det. Thomas was in charge of overseeing the controlled purchases. (T. at 30). Det. Thomas testified that he listened to the audio recording as the informant McDonald completed the purchase from Appellant. (T. at 31). Det. Thomas testified that he heard children on the recording, specifically an infant crying, while McDonald purchased the drugs from Appellant. (T. at 33). Following the controlled buy, Det. Thomas recovered the methamphetamine and recording device and debriefed the informant. *Id.* Det. Thomas also testified regarding the July 15, 2021, controlled buy, where he again had a supervisory role. (T. at 35).

**{¶9}** Detective Kyle Boerstler of the Licking County Sheriff's Department also testified regarding the controlled buys from Appellant. Det. Boerstler testified that he was assigned to the Central Ohio Drug Enforcement Task Force ("CODE"). (T. at 41). Det. Boerstler testified that he met with McDonald prior to the June 29, 2021, controlled buy, and that he searched McDonald and provided him with the money to make the buy. (T. at 43). Det. Boerstler testified that following the controlled buy, he recovered some cash and two ounces of methamphetamine which McDonald had purchased from Appellant. *Id.*

**{¶10}** Det. Boerstler testified that he also similarly participated in the July 15, 2021, controlled buy. (T. at 50-51). Det. Boerstler testified that Appellant lived with his girlfriend, Sydney McElfresh, and their daughter. (T. at 52). Det. Boerstler testified that the juvenile heard in the recording crying in the background during the second controlled buy is Appellant's daughter. (T. at 53).

**{¶11}** Det. Boerstler testified that on July 16, 2021, he obtained and executed a search warrant for Appellant's residence located at 999 South 30th Street. (T. at 55). Det. Boerstler testified that law enforcement officers recovered two firearms, psilocybin mushrooms, a clear plastic container of methamphetamine, and currency from Appellant's residence. (T. at 56). Det. Boerstler noted that Mrs. McElfresh and Appellant's juvenile daughter were present at the execution of the search warrant. *Id.*

**{¶12}** The court next heard from Mark Hiatt, a lab director at the Central Ohio Regional Crime Lab. (T. at 75). Hiatt tested the containers of the substances recovered from the controlled buys, and found that they contained 50.676 grams of methamphetamine from the June 29, 2021, purchase, and 55.895 grams and 51.510 grams of methamphetamine from the July 15, 2021, purchase. (T. at 79-82). Hiatt also tested items recovered from the execution of the search warrant and found a bag containing mushrooms had 1.796 grams of psilocybin mushrooms and a bag of .078 grams of methamphetamine. (T. at 83).

**{¶13}** Detective Jarod Conley of the Newark Police Department testified that he was assigned to the CODE, and assisted in the execution of the search warrant. (T. at 90). He testified that he took photographs of Appellant's residence and seized items, which the State introduced as evidence. (T. at. 90-94).

**{¶14}** Detective Adam Hoskinson of the Licking County Sheriff's Office testified that he was also assigned to CODE and that he participated in the search of Appellant's apartment, wherein he recovered an assault rifle from behind the headboard in the bedroom, and a handgun under the bed. (T. at 95-97).

**{¶15}** Detective Justin Woodyard of the Licking County Sheriff's Office, also assigned to CODE, testified that he assisted in the search of the residence, and that he recovered currency from an Isaiah Dooley who was in the process of exiting Appellant's residence, and the recovered currency included pre-marked money from the controlled buys. (T. at 101-102).

**{¶16}** Following Det. Woodyard's testimony the State rested. Appellant moved for a directed verdict under Criminal Rule 29 as to all counts. (T. at 105). The trial court denied Appellant's Rule 29 motion. (T. at 113).

**{¶17}** Appellant did not testify or call any witnesses. (T. at 115).

**{¶18}** After the close of evidence, the trial court found Appellant guilty on all counts. The trial court granted the Forfeiture Specification (U.S. Currency), and denied the Forfeiture Specifications for Firearms. (Judgment Entry, April 5, 2022).

**{¶19}** The court deferred sentencing pending the preparation of a presentence investigation report.

**{¶20}** On May 19, 2022, the trial court sentenced Appellant to indeterminate prison terms of five (5) to seven and one half (7 ½ ) years on Counts One and Two, a prison term of one (1) year on Count Three, and a prison term of one (1) year on Count Four, all of which were ordered to run concurrently, for an aggregate indeterminate prison term of five (5) to seven and one half (7 ½ ) years in the state penitentiary. (Judgment Entry, May 19, 2022). The court also imposed a mandatory term of post-release control of two (2) to five (5) years.

**{¶21}** Appellant did not object to his indeterminate prison sentence at sentencing.

**{¶22}** Appellant now appeals, raising the following assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN A DRUG TRAFFICKING CONVICTION WAS ELEVATED TO A FIRST DEGREE FELONY BASED ON A FINDING THAT THERE WAS A JUVENILE IN THE VICINITY THAT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE

{¶24} "II. APPELLANT'S CONVICTIONS FOR AGGRAVATED DRUG TRAFFICKING IN COUNTS ONE AND TWO WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE

{¶25} "II. INDEFINITE PRISON TERMS IMPOSED UNDER THE REAGAN TOKES LAW VIOLATE THE JURY TRIAL GUARANTEE, THE DOCTRINE OF SEPARATION OF POWERS, AND DUE PROCESS PRINCIPLES UNDER THE FEDERAL AND STATE CONSTITUTIONS."

**I., II.**

{¶26} In his first and second Assignments of Error, Appellant argues his drug trafficking convictions were against the manifest weight and sufficiency of the evidence. We disagree.

{¶27} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

**{¶28}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶29}** Appellant herein is challenging his convictions on two counts of Aggravated Trafficking in Methamphetamine, in violation of R.C. §2925.03(A)(1)(C)(1)(d), which provides, in relevant part:

**{¶30}** (A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

\*\*\*

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. The penalty for the offense shall be determined as follows:

\*\*\*

(d) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree, and the court shall impose as a mandatory prison term a second degree felony mandatory prison term. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, aggravated trafficking in drugs is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

**{¶31}** Pursuant to R.C. §2925.01(BB),

An offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within

one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

**{¶32}** Appellant herein argues that the state of Ohio failed to prove that the transactions occurred within view of a juvenile, or that the juvenile actually viewed the transactions, or that the juvenile was within one hundred feet of the transaction. (Appellant's Brief at 6-7).

**{¶33}** Upon review of the record, we find that the State presented testimony from the confidential informant, Det. McDonald, Det. Thomas and Det. Boerstler with regard to both the June 29th and July 15th controlled buys. The audio recordings made during both transactions were played for the trial court during which a child could be heard crying. The witnesses identified the crying child as Appellant's infant daughter.

**{¶34}** The juvenile-in-the-vicinity cases cited by Appellant each deal with situations where the child was present when a search warrant or an arrest was made but not when the drug transactions occurred. We therefore find they are inapplicable to the instant case as the child herein was present in the apartment when the drug transactions were taking place.

**{¶35}** We further find that the confidential information clearly identified Appellant as the person from whom he purchased the methamphetamine. While Appellant argues that the informant was not a reliable witness, having a long criminal history, issues relating to the credibility of the witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

**{¶36}** Finally, we find that the lab director testified as to the bulk weights of the drugs, 50.675 grams in the June 29th buy and 107.405 grams in the July 15th buy.

**{¶37}** Based on the foregoing, we find that the state of Ohio presented sufficient evidence to support a conviction in this matter. We further find that the trial court did not lose its way or create a miscarriage of justice in finding Appellant guilty of aggravated trafficking of methamphetamine with enhancements.

**{¶38}** Appellant's first and second assignments of error are overruled.

### III.

**{¶39}** In his third assignment of error, Appellant challenges the constitutionality of the Reagan Tokes Act, specifically R.C. §2967.271, which codified hybrid indefinite prison terms for first and second-degree felonies. Appellant argues that the Act violates the separation of powers doctrine, the constitutional right to trial by jury, due process and equal protection.

**{¶40}** We first note that pursuant to *State v. Maddox*, Ohio St.3d, 2022-Ohio-764, N.E.3d, the Ohio Supreme Court held that constitutional challenges to the Reagan Tokes Act are ripe for review on direct appeal.

**{¶41}** In *State v. Householder*, 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542, this Court set forth its position on the arguments raised in Appellant's fourth Assignment of Error:

> For the reasons stated in the dissenting opinion of The Honorable W. Scott Gwin in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate Appellant's constitutional rights to trial by jury and due process of law, and does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so

holding, we also note the sentencing law has been found constitutional by the Second, Third, Sixth, and Twelfth Districts, and also by the Eighth District sitting en banc. *See, e.g., State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2022-Ohio-1350; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470. Further, we reject Appellant's claim the Reagan Tokes Act violates equal protection for the reasons stated in *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353.

**{¶42}** Based on the forgoing authority, the trial court did not err in sentencing Appellant to an indefinite non-life term.

**{¶43}** Appellant's third assignment of error is overruled.

**{¶44}** The judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed

By: Wise, P. J.
Delaney, J., and
Baldwin, J., concur.

JWW/kw 0213